[Cite as *Cincinnati v. Harrison*, 2014-Ohio-2844.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, OHIO, | : | APPEAL NO. C-130195 |
| | | TRIAL NO. A-0900755 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CITY OF HARRISON, OHIO, | : | |
| | | |
| Defendant-Appellant, | : | |
| | | |
| and | : | |
| | | |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, | : | |
| | | |
| Defendant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal:  June 30, 2014

*Terrance Nestor,* Interim City Solicitor, and *Frost Brown Todd LLC, Stephen N. Haughey, Matthew C. Blickensderfer* and *Christopher S. Habel,* for Plaintiff-Appellee,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Michael E. Maundrell*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}    Defendant-appellant, the city of Harrison, Ohio, appeals from the trial court's summary judgment entry denying it the benefit of immunity from suit by the plaintiff-appellee, the city of Cincinnati.  Cincinnati sought declaratory and injunctive relief to prevent Harrison from providing water service to customers in disputed areas of western Hamilton County, Ohio.  Because sovereign immunity under R.C. Chapter 2744 is not a defense to claims seeking injunctive relief, we affirm the trial court's entry of summary judgment, in part.  But because the trial court erred in denying Harrison the protections of the sovereign immunity statutes when it awarded money damages for lost revenues and attorney fees, we reverse the trial court's judgment, in part.  Because the other portions of the trial court's summary-judgment entry that Harrison seeks review of are not otherwise final, we cannot reach any conclusion on the merits of these other arguments.

{¶2}    Harrison's sole assignment of error is overruled in part and sustained in part.  Because Harrison was not immune under R.C. Chapter 2744 from the injunctive and declaratory relief ordered by the trial court, we affirm that portion of the trial court's March 27, 2012 judgment.  But since Harrison was immune from the damages awarded under claims sounding in intentional tort, and from the attorney-fees award, we reverse that portion of the trial court's judgment

### *Cincinnati and Harrison Compete for Water Customers*

{¶3}    We summarized the background of this dispute in our 2010 decision affirming the trial court's denial of Cincinnati's motion for a temporary restraining order:

> The Greater Cincinnati Water Works (GCWW) is a department
>
> of Cincinnati that provides water to the city and a majority of

Hamilton County. Pursuant to [the 1987] contract with [the] Board of Commissioners of Hamilton County, Ohio, GCWW began to develop a project called "Water West." The project was designed to provide for the water needs of much of the western portion of Hamilton County. GCWW expended a great deal of capital during the implementation of the project, constructing water mains and lines throughout the area. Assumptions were made, based upon projected usage and other factors, that justified the expenditure and development.

Harrison was offered an opportunity to receive water service from GCWW by purchasing water wholesale from GCWW, but Harrison declined. Instead, Harrison decided to provide water to its own citizens. Additionally, Harrison planned to provide water to two additional areas: an area that had been annexed by Harrison and another area of Harrison Township that had not. These two areas were within the area that GCWW had planned to serve as part of Water West. In fact, GCWW had already begun construction of its own water mains in the two areas.

When Cincinnati learned that Harrison had begun the process of spending public funds to install water mains and to otherwise prepare to provide competing service, Cincinnati filed suit.

*Cincinnati v. Harrison*, 1st Dist. Hamilton No. C-090702, 2010-Ohio-3430, ¶ 2-4. The additional "disputed areas" included portions of Crosby Township and northern Harrison Township including some areas annexed by Harrison.

*Cincinnati's Amended Complaint*

{¶4}     In February 2011, Cincinnati filed an amended complaint raising seven claims for relief.  Six of the counts alleged intentional conduct by Harrison.  In count one, Cincinnati alleged that Harrison's encroachment into the disputed areas had violated Cincinnati's exclusive right to provide service in those areas.  In enacting R.C. Chapter 6103, Cincinnati argued, the General Assembly had authorized the county and Cincinnati to enter into intergovernmental agreements for public water systems.  See R.C. 715.02 and 6103.02.  Pursuant to those agreements, Cincinnati could "exercise any power, perform any function, or render any service, on behalf of" the county.  R.C. 307.15.

{¶5}     Cincinnati contended that those functions included the ability to enforce its exclusive rights under its 1987 contract with the county.  Section 3 of the contract provided that the county

> will not furnish or contract with others to furnish during the term of this contract, water to anyone within [the disputed areas], except where [Cincinnati] is incapable of doing so * * *. [And that the county] shall take no action, nor in any manner aid or assist others in taking any action * * * to effect the construction or operation of any public water system in the [County Water Area or in the supplemental Area] or to secure a source of water supply for any other customers in [those areas].

{¶6}     Section 17 also stated that Cincinnati "is authorized to enforce in the [disputed areas] all ordinances, laws, standards, specifications, rules and regulations now or hereafter lawfully in effect in Cincinnati and/or the [County Water Area, the area outside of Cincinnati consisting of the certain unincorporated territory of

Hamilton County]."    Cincinnati alleged that the disputed areas are within the supplemental County Water Area covered under the contract.

{¶7}    In count two, Cincinnati alleged that Harrison's official legislative acts authorizing encroachment had unlawfully impaired the county contract.    In count five, it alleged that Harrison had deliberately waited while Cincinnati and the county spent tens of millions of dollars to develop infrastructure to serve the disputed areas and only then had engaged in a "line laying contest" with Cincinnati in violation of the doctrines of waiver, laches, and equitable estoppel. In count seven, Cincinnati asserted that Harrison had tortiously interfered with the 1987 county contract and its amendments.

{¶8}    Cincinnati sought declaratory and injunctive relief.  It sought to enjoin Harrison from taking further steps to encroach into the disputed areas, interfere with Cincinnati's ability to pay its existing debts used for improvements, or impair Cincinnati's ability to operate under the Water West plan.  It also sought a declaration that the 1987 contract and its amendments precluded Harrison from extending its water system into the disputed area.  Cincinnati's prayer for relief included an award of monetary damages, attorney fees, costs, and any other relief to which it was entitled.

{¶9}    Harrison answered Cincinnati's petition and raised, inter alia, the defense that it was immune from Cincinnati's claims under R.C. Chapter 2744, the Ohio sovereign-immunity statute.

{¶10}    In September 2011, the trial court granted Cincinnati's motion to bifurcate from this case the issues raised in counts three and four of the amended complaint, alleging that Harrison's encroachment into the disputed areas was an unlawful regulatory taking.  In April 2012, Cincinnati voluntarily dismissed the Board of County Commissioners without prejudice under Civ.R. 41(A).  Count six of the

amended complaint had alleged that the county had breached the Water Area Contract with Cincinnati.

{¶11} By mid-2012, the parties had amassed copious amounts of material in support of their positions, including deposition testimony and numerous documents from consulting engineers; Cincinnati, county, and Harrison officials; and GCWW employees. The documentary evidence included emails, letters between city and county officials, and engineering diagrams of the disputed areas.

{¶12} In July 2012, Harrison moved for summary judgment, asserting that Cincinnati did not have exclusive authority to provide water to the disputed areas, that Cincinnati lacked the standing to enforce its claims, that Cincinnati had acted in conformity with Harrison's contention that Cincinnati lacked exclusive authority, and that in the absence of exclusive authority for either municipality to serve water to the disputed areas, Harrison was entitled to "equal dignity" to provide water service. Harrison also expressly argued that it was entitled to judgment as a matter of law on its defense of sovereign immunity. Cincinnati filed a cross-motion for summary judgment on the remaining counts of its amended complaint: counts one, two, five, and seven.

{¶13} In acknowledgement of the complex issues to be resolved, and with the consent of the parties, the trial court received testimony from two "clarifying" expert witnesses—one from each side—before ruling on the motions. *See Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 22 (1st Dist.) (a trial court may consider evidence other than that specified in Civ.R. 56 when there has been no objection to its use).

### *The Trial Court's Summary-Judgment Decisions*

{¶14} On March 1, 2013, in a five-page written decision and judgment entry, the trial court granted Cincinnati's cross-motion for summary judgment. While the

6

court's judgment failed to mention Harrison's sovereign-immunity defense, we conclude that the trial court denied it, as it overruled Harrison's motion for summary judgment. The court also made specific "hold[ings]" regarding the four counts of the amended complaint on which Cincinnati had moved for summary judgment:

1. Regarding Count One [alleging a violation of state law], Cincinnati shall maintain exclusive jurisdiction over water service to the disputed areas. Further, Harrison is hereby enjoined from any further acts intended to encroach upon Cincinnati's water service rights to these areas.

2. Regarding Count Two [alleging impairment of contract], Harrison's legislative actions unlawfully impaired Cincinnati's contractual obligations and rights under the * * * contract. Harrison is hereby enjoined from any further acts that will impair or interfere with the fulfillment of said contract. Further, Cincinnati is entitled to damages in the amount of lost revenues from customers that Harrison began to serve in the disputed areas as well as legal fees, costs, and expenses incurred by Cincinnati to defend its rights and obligations under the contract (to be determined at a later date).

3. Regarding Count [Seven, alleging tortious interference with the 1987 county contract and its amendments][1] Harrison's actions unlawfully and [tortiously] interfered with Cincinnati's rights under the * * * contract and Harrison is hereby enjoined from any further

---

[1] In its March summary-judgment decisions, the trial court incorrectly referred to count five as alleging tortious interference. That claim was raised in count seven of the amended complaint. The court also referred to count seven as alleging claims for waiver, laches, and equitable estoppel. Those claims were raised in count five. Throughout this opinion, we will refer to the counts by their proper number as found in Cincinnati's amended complaint.

acts intended to interfere with Cincinnati's rights under the contract. Further, Cincinnati is entitled to damages in the amount of lost revenues from customers that Harrison began to serve in the disputed areas as well as legal fees, costs, and expenses incurred by Cincinnati to defend its rights and obligations under the contract (to be determined at a later date).

4. Regarding Count [Five, arguing laches, waiver, and estoppel], Harrison's actions (or lack thereof) (i) constituted a waiver on its part of any right that it may have had to serve County customers in the disputed areas; (ii) constituted actionable laches on its part with respect to any right it may have had to serve County customers in the disputed area; and (iii) caused Cincinnati to justifiably rely upon said course of action by expending millions of dollars to provide water service to the disputed areas, thus equitably stopping Harrison from encroaching upon Cincinnati's current service rights. In addition, Harrison is enjoined from taking any further actions inconsistent with the court's declarations regarding waiver, laches, and equitable estoppel.

{¶15} The trial court's decision and judgment entry thus: (1) enjoined Harrison from encroaching and interfering in the disputed areas, (2) awarded damages, in an amount to be determined later, for the "amount of lost revenues" resulting from the encroachment, and (3) awarded fees, costs, and expenses, in an amount to be determined later, for the costs of litigation. Each of these orders effectively denied Harrison the benefit of its alleged immunity from suit.

{¶16}   In addition to deferring the determination of the amount of lost revenue, fees, costs, and expenses due to Cincinnati, the court also reserved "the right to provide further relief as it deems appropriate."  Despite awarding Cincinnati an as yet undetermined sum for attorney fees, the court did not make any finding that Harrison had acted maliciously or in bad faith.

{¶17}   On March 27, 2013, the trial court issued an amended decision and judgment. The amended judgment repeated the resolution of the summary-judgment motions announced on March 1.  It also included, at Harrison's request, the trial court's certification that there was no just reason for delay under Civ.R. 54(B).  Harrison then brought this appeal.  In a single assignment of error, Harrison contends that the trial court erred in denying its motion for summary judgment and in granting Cincinnati's cross-motion.

### An Order Denying Sovereign Immunity Is Immediately Appealable

{¶18}   Because an appellate court's jurisdiction is limited to review of judgments or final orders, it must determine its own jurisdiction to proceed before reaching the merits of any appeal.  *See State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).

{¶19}   Thus, while the denial of a motion for summary judgment is generally not a final, appealable order, "[w]hen a trial court denies a motion in which a political subdivision * * * seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)."  *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus and ¶ 9; *see Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus (the statute permits an immediate appeal, in a multiple-claim action, of an order denying alleged immunity, even when the order makes no

9

determination pursuant to Civ.R. 54[B]). Since Harrison is appealing from an order which denies it the benefit of an alleged immunity, we have jurisdiction to resolve that issue. *See Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶ 31.

### *The Summary-Judgment Standard*

{¶20} The function of summary judgment is to determine from the evidentiary materials whether triable factual issues exist, regardless of whether the facts of the case are complex. A court is not precluded from granting summary judgment merely because of the complexity or length of the factual record. *See Gross v. Western-Southern Life Ins. Co.*, 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412, (1st Dist.1993).

{¶21} Summary judgment is proper under Civ.R. 56(C) when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶22} Harrison's immunity defense was resolved by the trial court on cross-motions for summary judgment. We have in the past questioned the wisdom of resolving matters seeking declaratory judgment by summary judgment, particularly where the trial court has yet to fully declare the rights, status, and other legal relations of the parties. *E.g., Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO,* 93 Ohio App.3d 162, 164, 638 N.E.2d 94 (1st Dist.1994). Nonetheless, the parties' election to address the issues by cross-motions for summary judgment demonstrates that both sides believed that there was no genuine issue of material fact in dispute and that the court was free to render a decision as to Harrison's

immunity as a matter of law. *See Costanzo v. Nationwide Mut. Ins. Co.*, 161 Ohio App.3d 759, 2005-Ohio-3170, 832 N.E.2d 71, ¶ 10 (1st Dist.). We review summary-judgment determinations de novo, without deference to the trial court's ruling. *See Polen v. Baker*, 92 Ohio St.3d 563, 564-565, 752 N.E.2d 258 (2001).

{¶23} Harrison asserts that it is immune from liability for discretionary decisions that its legislative and executive officials made in the exercise of governmental functions to expand its municipal water system. *See, e.g.,* R.C. 2744.03(A). Since Cincinnati's claims sound in intentional tort, Harrison argues, inter alia, that the trial court erred in denying its motion for summary judgment in which it asserted that it was entitled to immunity under R.C. Chapter 2744.

### The Three-Tiered Sovereign-Immunity Scheme

{¶24} R.C. Chapter 2744 provides a three-tiered scheme that grants broad immunity to political subdivisions. *See Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7. The first tier of the scheme provides a general grant of immunity: "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

{¶25} Once immunity is established, the next tier of the analysis carves out certain exceptions to immunity listed in R.C. 2744.02(B) which re-establish the liability of a political subdivision where there is negligence with respect to the exercise of proprietary functions.

{¶26} Finally, if any exception applies to re-impose liability, the third tier of the analysis focuses on whether any of the defenses contained in R.C. 2744.03 apply to reinstate immunity. *See Munday v. Lincoln Hts.*, 1st Dist. Hamilton No. C-120431,

2013-Ohio-3095, ¶ 19; *see also R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 8 (1st Dist.).

{¶27} Here, Harrison argues that since Cincinnati's claims sound in intentional tort, it was entitled to immunity under R.C. Chapter 2744. Cincinnati claimed that Harrison had tortiously interfered with and impaired its contract with the county to provide water to the disputed areas. Cincinnati did not assert damages arising from Harrison's negligent establishment, expansion, or operation of its water system in the disputed areas. Rather, Cincinnati argued that Harrison had taken actions "both as a governmental entity and through its elected officials, deliberately intended to solicit the County to enter into an agreement with Harrison giving it service rights in the Disputed Areas despite the County Contract, and deliberately intended to impair Cincinnati's rights and duties under the County Contract." Harrison argues that these claims are barred by R.C. Chapter 2744, whether it had been engaged in a governmental function, as it asserts, or in a proprietary function as Cincinnati argues. *See* R.C. 2744.01(G)(2)(C) (classifying as a proprietary function "[t]he establishment, maintenance, and operation of a utility, including but not limited to * * * a municipal corporation water supply system.").

{¶28} Harrison is correct that R.C. 2744.02(B) includes no specific exceptions for intentional torts which would re-establish any liability granted under the first tier. "[P]olitical subdivisions are immune under R.C. 2744.02 from intentional tort claims." *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208, ¶ 11 (12th Dist.); *see Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 780 N.E.2d 543 (2002); *R.K.* at ¶ 49.

### *Harrison Is Not Immune to Claims for Injunctive and Declaratory Relief*

{¶29}   But the resolution of Harrison's immunity as to the first, or injunctive, relief ordered by the trial court lies in the General Assembly's intent in enacting R.C. Chapter 2744: "[t]o limit the exposure of political subdivisions to money damages." *Engleman v. Cincinnati Bd. of Edn.*, 1st Dist. Hamilton No. C-000597, 2001 Ohio App. LEXIS 2728, *6 (June 22, 2001); *see Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 453, 639 N.E.2d 105 (1994).  Where a political subdivision is not being subjected to a claim for money damages, the near absolute immunity of R.C. 2744.02(A)—the first tier of the scheme—is not available.

{¶30}   R.C. 2744.02(A)(1) extends immunity to political subdivisions against claims for "damages in a civil action for * * *  loss to person or property" but not to those claims seeking equitable relief.  "By its very language and title, [R.C. Chapter 2744] applies to tort actions *for damages*." (Emphasis added.)  *Big Springs Golf Club v. Donofrio*, 74 Ohio App.3d 1, 2, 598 N.E.2d 14 (9th Dist.1991).  Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief.  *See Portage Cty. Bd. of Commrs. v. Akron*, 156 Ohio App.3d 657, 2004-Ohio-1665, 808 N.E.2d 444, ¶ 186 (11th Dist.); *see also Mega Outdoor, LLC v. Dayton*, 173 Ohio App.3d 359, 2007-Ohio-5666, 878 N.E.2d 683, ¶ 54 (2d Dist.); *State ex rel. Johnny Appleseed Metro. Park Dist. v. Delphos*, 141 Ohio App.3d 255, 258, 750 N.E.2d 1158 (3d Dist.2001); *Rocky River v. Lakewood*, 8th Dist. Cuyahoga No. 90908, 2008-Ohio-6484, ¶ 13; *Parker v. Upper Arlington*, 10th Dist. Franklin No. 05AP-695, 2006-Ohio-1649, ¶ 9 (sovereign immunity is only a defense to tort claims seeking monetary damages, and not to claims seeking declaratory relief); *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 41.

{¶31}   For example, R.C. Chapter 2744 does not provide immunity to a political subdivision against a claim of unconstitutional taking of property damaged during a drug raid.  That claim is "constitutional in nature," and statutory immunity is not a proper defense to claims that "d[o] not sound in tort."  *See Brkic v. Cleveland*, 124 Ohio App.3d 271, 282, 706 N.E.2d 10 (8th Dist.1997).

{¶32}   Where a sign company had sued the city of Dayton for a declaration that it was entitled to a sign permit outside the right-of-way, for mandamus requiring the city to prove the sign was installed on property zoned for billboards, for an injunction restraining the enforcement of a stop-work order, and for compensatory damages, the trial court granted the city summary judgment on each count of the complaint because Dayton was "entitled to immunity."  *Mega Outdoor, LLC*, 173 Ohio App.3d 359, 2007-Ohio-5666, 878 N.E.2d 683, at ¶ 54.  Because "[s]overeign immunity applies to money damages, not to claims for equitable relief, such as injunctive relief," the Second District Court of Appeals held that the trial court had erred in granting summary judgment on the sign company's claims for declaratory judgment, mandamus, and injunctive relief. *Id.*  But the trial court had properly granted summary judgment to the city on the company's claim for compensatory damages.  *See id.* at ¶ 53.

{¶33}   The established rule that sovereign immunity is not a bar to claims seeking injunctive relief is not limited to situations where the plaintiff is a private citizen.   Where one municipality had filed a nuisance complaint against another municipality, seeking an injunction against the operation of its dog park, the trial court's dismissal of the claim on the basis of sovereign immunity was reversed because sovereign immunity under R.C.  Chapter 2744 "applies only to an action for damages." *Rocky River*, 8th Dist. Cuyahoga No. 90908, 2008-Ohio-6484, at ¶ 13.

14

{¶34} In its July 2012 motion for cross-summary judgment, Cincinnati moved for summary judgment against Harrison on the four remaining counts of its amended complaint: count one (violation of state law), count two (impairment of contract), count five (waiver, laches, and equitable estoppel), and count seven (tortious interference). As to each count, Cincinnati claimed that it was entitled to "injunctive and declaratory relief" to enjoin Harrison from further acts of interference with its contract with the county to provide water to the disputed areas. Cincinnati did not assert any claim in the motion for monetary damages, though it had in its amended complaint.

{¶35} In its March 2013 judgment granting summary judgment to Cincinnati, the trial court expressly enjoined Harrison from further acts intended to encroach on Cincinnati's water-service rights (count one), to impair or interfere with Cincinnati's contract with the county (count two), to violate its decision that Harrison's actions were barred by the doctrines of waiver, laches, and equitable estoppel (count five), and to interfere with Cincinnati's rights under the contract.

{¶36} Sovereign immunity under R.C. Chapter 2744 is not a defense to claims seeking injunctive relief. *See Portage Cty. Bd. of Commrs.,* 156 Ohio App.3d 657, 2004-Ohio-1665, 808 N.E.2d 808, at ¶ 186. Thus Cincinnati is entitled to judgment as a matter of law, and the trial court did not err in overruling that portion of Harrison's motion for summary judgment asserting that it was entitled to immunity from the injunctions ordered by the trial court. *See* Civ.R. 56(C). We overrule that portion of Harrison's assignment of error.

### Harrison Is Immune From Damages Awarded in Intentional-Tort Claims

{¶37} Unlike the situation where a trial court has awarded declaratory or injunctive relief, where the court awards money damages as relief for claims sounding

in intentional tort, the political subdivision is immune. *See Williams*, 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208, at ¶ 11.

{¶38} In its March 2013 judgment the trial court awarded Cincinnati damages for two counts, the second and the seventh. In both counts, Cincinnati had alleged that deliberate, intentional conduct by Harrison had impaired and tortiously interfered with Cincinnati's county water contract. The trial court awarded Cincinnati "damages in the amount of lost revenues from customers that Harrison [had begun] to serve in the disputed areas."

{¶39} This relief constituted an award of money damages under the first tier of the sovereign-immunity scheme. *See* R.C. 2744.02(A)(1). None of the exceptions to immunity listed in R.C. 2744.02(B) have application to re-establish liability for intentional torts. Therefore, Harrison is immune from the trial court's award of damages for lost revenues. Since the trial court erred in awarding lost-revenues damages, we sustain that portion of Harrison's assignment of error.

### Harrison Is Immune from the March 27, 2013 Award of Attorney Fees

{¶40} Harrison also argues that in awarding attorney fees to Cincinnati, under counts two and seven, the trial court denied it the benefit of an alleged immunity under R.C. Chapter 2477. It maintains that because R.C. 2744.05(A) prevents the trial court from awarding punitive damages, its award of attorney fees was also barred. *See R.K.*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 47.

{¶41} This is true where an award of attorney fees is predicated on punitive or exemplary damages. *E.g.*, *Henry v. Akron*, 27 Ohio App.3d 369, 371, 501 N.E.2d 659 (9th Dist.1985) (since punitive damages were not available against a political subdivision, "it follows that attorney fees also may not be awarded"). Here the trial court did not award punitive damages.

{¶42} But there are other grounds to support an award of attorney fees. This court and the Ohio Supreme Court have held that an independent basis to award fees against a municipal corporation exists when the award is supported by an express finding of bad-faith conduct. *See Thomas v. Cincinnati*, 1st Dist. Hamilton No. C-050643, 2006-Ohio-3598, discretionary appeal not allowed, 112 Ohio St.3d 1406, 2006-Ohio-6447, 858 N.E.2d 818; *see also State ex rel. Durkin v. Ungaro*, 39 Ohio St.3d 191, 193, 529 N.E.2d 1268 (1988); *compare Hunsche v. Loveland*, 133 Ohio App.3d 535, 542, 729 N.E.2d 393 (1st Dist.1999) (relying on the rule announced in *Henry* at 371, but holding that despite a finding of bad-faith conduct, "neither punitive damages nor attorney fees can be awarded against a municipal corporation").

{¶43} But in the absence of a finding of bad faith, a trial court errs in awarding attorney fees not supported by other statutory authority. *See Wright v. Fleming*, 1st Dist. Hamilton No. C-070121, 2008-Ohio-1435, ¶ 5-6; *see also KGM Capital, LLC v. Jackson*, 1st Dist. Hamilton No. C-130438, 2014-Ohio-2427, ¶ 24. Here the trial court has made no finding that Harrison acted in bad faith. In the absence of that finding, or other statutory authority to impose attorney fees, Harrison is entitled to the protection of R.C. Chapter 2744 and thus is immune from the award of attorney fees ordered by the court in its March 27 judgment.

{¶44} Since the trial court erred in awarding attorney fees against Harrison, we sustain that portion of Harrison's assignment of error.

*The Trial Court's Remaining Orders Not Implicating Immunity Are Not Final*

{¶45} Less than two months after Harrison had filed its notice of appeal, Cincinnati moved to dismiss the appeal in part. Cincinnati did not dispute that the resolution of Harrison's immunity was immediately appealable. It argued, however, that those aspects of the trial court's summary judgment entry not touching on

immunity, including the measure of restitution and fees, the proper timing and scope of the injunctive relief, and the award of other relief sought under count one of the amended complaint, were not yet final orders and thus were not yet appealable, despite the trial court's determination that there was no just reason for delay. This was particularly so where the trial court had expressly reserved the right to provide further relief. For orders not immediately appealable under R.C. 2744.02(C) to be reviewable, the orders must be final within the meaning of R.C. 2505.02 and meet the requirements of Civ.R. 54(B), if applicable. *See Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 540 N.E.2d 266 (1989). On June 12, 2013, a three-judge panel of this court overruled the motion. *See* 1st Dist. Loc.R. 15.1(C).

{¶46} Cincinnati has renewed its argument in the required jurisdictional statement contained in its appellate brief. *See* 1st Dist. Loc.R. 16.1(A)(2)(a). Because a challenge to subject-matter jurisdiction is never waived, we may re-evaluate our jurisdiction to proceed at any time, even on the consideration of a direct appeal. *See Internatl. Lottery v. Kerouac*, 102 Ohio App.3d 660, 670, 657 N.E.2d 820 (1st Dist.1995); *see also* Civ.R. 12(H)(3); *State ex rel. White,* 79 Ohio St.3d at 544, 684 N.E.2d 72. This subsequent decision is guided by a thorough review of the record and, as here, by the written and oral arguments of counsel.

{¶47} Harrison argues that since the trial court denied its summary-judgment motion in its entirety and added Civ.R. 54(B) certification to its March 27, 2013 judgment entry, for purposes of conserving judicial resources it is entitled to an immediate appeal of all the orders contained within the trial court's amended judgment. In addition to the damages and fees issues, Harrison argues that the interpretation of the county water contract, Cincinnati's rights to enforce it, and the

18

interpretation of Cincinnati's rights under R.C. Chapter 6103 are also ready for review. We now disagree.

{¶48}    Orders entered in an action for declaratory judgment, which is a special proceeding, are final when they affect a substantial right.  *See* R.C. 2505.02(B)(2); *see also Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶ 21.  It is beyond cavil that the trial court's orders implicate Harrison's substantial rights.  *See* R.C. 2505.01(A)(1).   But here the trial court's orders not touching immunity are "tentative, informal, or incomplete" and are subject to change or reconsideration upon the trial court's own motion.  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).  Because the trial court's orders, even though entered in a declaratory judgment action, "contemplate further action," they are not final.  *State ex rel. New Concept Hous., Inc. v. Metz*, 123 Ohio St.3d 457, 2009-Ohio-5862, 917 N.E.2d 796, ¶ 3; *see State ex rel. A & D Ltd. Partnership v. Keefe*, 77 Ohio St.3d 50, 53, 671 N.E.2d 13 (1996); *State ex rel. Dewine v. Big Sky Energy*, 11th Dist. Ashtabula No. 2012-A-0042, 2013-Ohio-437, ¶ 12.   Only after the trial court has resolved these matters and has entered a final judgment will they be ready for appellate review.

{¶49}    Because the other orders Harrison seeks review of are not otherwise final, "this court's jurisdiction in this appeal, arising under R.C. 2744.02(C), is limited to the review of the trial court's denial of the benefit of immunity."  *Jones*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, at ¶ 32; *see Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 32 (appellate review under R.C. 2744.02(C) is limited to the denial of immunity); *Mortensen v. Bd. of Cty. Commrs.*, 12th Dist. Butler No. CA2007-04-088, 2008-Ohio-1017, ¶ 13-14.  When appealing a denial of immunity under R.C. 2744.02(C), and where the order is not otherwise final and appealable, a

party may not raise other alleged errors concerning the denial of summary judgment. *See Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810, 822 (4th Dist.); *see also Inwood Village, Ltd. v. Cincinnati*, 1st Dist. Hamilton No. C-110117, 2011-Ohio-6632, ¶ 7.

### *Conclusion*

{¶50}   Harrison's sole assignment of error is overruled in part and sustained in part.  Because Harrison was not immune under R.C. Chapter 2744 from the injunctive and declaratory relief ordered by the trial court, we affirm that portion of the trial court's March 27, 2013 judgment.  But since Harrison was immune from the damages awarded under claims sounding in intentional tort, and from the attorney fees awarded here, we reverse that portion of the trial court's judgment.

{¶51}   Since we have overruled that portion of Harrison's assignment of error seeking review of issues not directly reaching its immunity, we do not reach any conclusion on the merits of these other arguments.

Judgment affirmed in part, reversed in part, and cause remanded.

**HENDON, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.